## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAQUAN DAVIES,<br>    *Plaintiff,*<br><br>v.<br><br>INVESTIGATION OFFICER HICKLEY, *et al.*,<br>    *Defendants.* | No. 3:20-cv-00940 (VAB) |

## INITIAL REVIEW ORDER

Jaquan Davies ("Plaintiff"), currently resides in Bloomfield, Connecticut, and has filed a civil rights Complaint *pro se* under 42 U.S.C. § 1983 against Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez, Unit Manager Lieutenant Ocasio, Warden Corcella, Security Director Antonio Santiago, and Security Risk Group ("SRG") Coordinator Papoosha. *See* Compl., ECF No. 1, at 1 (July 8, 2020).

Defendants allegedly failed to provide him with procedural due process in connection with his designation as a member of an SRG and placement in the SRG program and subjected him to unconstitutional conditions during his confinement in the SRG program.

For the reasons set forth below, the Court will **DISMISS** the Complaint in part.

## I.     BACKGROUND

On April 3, 2018, a judge in the Superior Court for the Judicial District of Hartford sentenced Mr. Davies to ten years of imprisonment, execution suspended after four years, and followed by three years of probation pursuant to his plea of guilty to one count of robbery in the second degree in violation of Connecticut General Statutes § 53a-135(a)(1)(A). *See* https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=9b1e0f4f-f48a-4e89-b853-93819edb554c. In May 2019, Mr. Davies resided at Carl Robinson Correctional

Institution in Cell/Bunk 174 in Building 4-B-side. Compl. at 2 ¶¶ 1-3; *id.* at 16. Inmate Aharon Ron allegedly was Mr. Davies's cellmate. *Id.* at 3 ¶ 14.

On May 2, 2019, Investigation Officer Hickley allegedly directed Mr. Davies to accompany him to an unknown destination. *Id.* at 2 ¶¶ 1-3; *id.* at 16. Investigation Officer Hickley and another officer allegedly escorted Mr. Davies to the lobby of "Operations." *Id.* at 2 ¶¶ 2-4. Mr. Davies allegedly overheard the correctional officer mention the name of his cellmate, Inmate Aharon Ron, and noticed that the officer was holding a photo album and his cellmate's Bible. *Id.* at 2 ¶ 6. A few minutes later, Lieutenant Ouellette and Intelligence Officer Ramirez allegedly called Mr. Davies into a room. *Id.* at 2 ¶ 7.

Intelligence Officer Ramirez allegedly explained that he and Lieutenant Oullette had summoned Mr. Davies because documents related to an SRG known as the Latin King gang had been found in a Bible under Mr. Davies's television set. *Id.* at 2 ¶¶ 8, 10. Mr. Davies allegedly stated that he had never opened his cellmate's books and that he was not a member of the Latin King gang because he was black. *Id.* at 2 ¶¶ 9-10. Intelligence Officer Ramirez allegedly asked Mr. Davies who had given him the Bible or in the alternative, if it was not his Bible, who owned the Bible. *Id.* at 2 ¶ 12. Mr. Davies allegedly would not tell Ramirez who owned the bible. *Id.* at 3 ¶ 13. Intelligence Officer Ramirez allegedly then placed Mr. Davies in the restrictive housing unit pending an SRG investigation. *Id.*

Two days later, Inmate Aharon Ron allegedly was placed in a cell in the restrictive housing unit. *Id.* at 3 ¶ 14. Inmate Ron allegedly assured Mr. Davies that he would inform Lieutenant Oullette that the Bible was his. *Id.* at 3 ¶ 15. Two days after this conversation, Lieutenant Oullette allegedly entered the restrictive housing unit and Inmate Ron allegedly

informed Lieutenant Oullette that the Bible was his and that Mr. Davies was only using it to prop up his television set. *Id.* at 3 ¶ 16. Lieutenant Oullette allegedly stated that he did not care whether the Bible belonged to Mr. Davies or his cellmate or whether Mr. Davies's cellmate tried to take the blame, Mr. Davies was "taking the fall." *Id.* at 3 ¶¶ 18-19. Lieutenant Oullette allegedly suggested that Mr. Davies should not fight the "ticket" and to "cop out." *Id.* at 3 ¶ 20.

Six days after having been placed in a cell in the restrictive housing unit, Investigation Officer Hickley allegedly called Mr. Davies to his office and indicated that if Mr. Davies chose to challenge the ticket at a hearing, he would "make jail real hard for" Mr. Davies and he would receive the maximum penalties. *Id.* at 3 ¶ 22. Mr. Davies allegedly stated that he had the right to fight the ticket at a hearing. *Id.* at 4 ¶ 23. Investigation Officer Hickley allegedly swore at Mr. Davies and stated that if Mr. Davies lost at the hearing, he would be placed in Phase 1 of the SRG program and would not have access to a television or a CD player and would only be permitted to make three telephone calls to family members per week. *Id.* at 4 ¶¶ 23-24.

 Mr. Davies allegedly informed Lieutenant Oullette and Investigation Officer Hickley that the document found in the Bible was not written in his handwriting. *Id.* at 4 ¶ 27. Inmate Ron allegedly suggested that Investigation Officer Hickley check to see that the document was written in his handwriting. *Id.* at 4 ¶ 28. Investigation Officer Hickley allegedly stated that he would not check because he did not want to have to redo the paperwork. *Id.*

Investigation Officer Hickley allegedly visited Mr. Davies at his cell in the restrictive housing unit and asked if was ready to sign the ticket. *Id.* at 4 ¶ 29. Mr. Davies allegedly indicated that he would not sign the ticket. *Id.* Mr. Davies allegedly informed Investigation Officer Hickley that he if was a member of a gang it would not be the Latin King gang. *Id.* at 4 ¶

3

30. Investigation Officer Hickley allegedly stated that it did not matter whether Mr. Davies signed the ticket, he would make sure that Mr. Davies was placed in Phase 3 of the SRG program and suggested that Mr. Davies would not be permitted to participate in a hearing associated with the disposition of the ticket. *Id.* at 4 ¶¶ 29, 31. Investigation Officer Hickley allegedly informed Mr. Davies that if he signed the ticket, he would be permitted to make telephone calls, have visits, go the commissary and to receive mail. *Id.* at 4 ¶ 32. Mr. Davies allegedly asked to speak to Intelligence Officer Ramirez about his membership in a gang other than the Latin King gang. *Id.* at 4 ¶ 33. Investigation Officer Hickley allegedly refused Mr. Davies's request. *Id.*

At a later date, Mr. Davies allegedly admitted to Lieutenant Oullette that he was a member of an SRG called "Solid" or "Los Solids." *Id.* aat 5 ¶¶ 34-35, 40. Mr. Davies allegedly stated that he would sign the ticket if the ticket was edited to reflect that he was a Solid and not a Latin King. *Id.* at 5 ¶ 36. Lieutenant Oullette allegedly assured Mr. Davies that he would make the change to the ticket. *Id.* at 5 ¶ 37.

On May 6, 2019, Mr. Davies allegedly signed a form acknowledging that he was a member of a gang but did not check off the box indicating his gang affiliation. *Id.* at 5 ¶ 38. Later that day, Lieutenant Oullette allegedly brought the form back to Mr. Davies who noticed that the box next to the Latin King gang affiliation had been checked off. *Id.* at 5 ¶ 39. Lieutenant Oullette allegedly stated that he would change the affiliation to "Los Solids." after Mr. Davies signed the form. *Id.* ¶ 40. Mr. Davies allegedly refused to sign the form. *Id.* An hour later, Lieutenant Oullette allegedly brought the form back but the box next to the Latin King gang was still checked. *Id.* Mr. Davies allegedly refused to sign the form. *Id.*

On May 7, 2019, Lieutenant Oullette allegedly brought the form to Mr. Davies but it still

listed the Latin King gang as the gang to which Mr. Davies was affiliated. *Id.* ¶ 42. Mr. Davies allegedly refused to sign the document and stated that he should not be sent to Phase 3 of the SRG program for something he did not do. *Id.* at 5 ¶¶ 42, 44. Lieutenant Oullette allegedly placed Mr. Davies on loss of social telephone privileges for thirty days. *Id.* at 5 ¶ 42.

After prison officials allegedly transferred Mr. Davies to Corrigan-Radgowski to be placed in Phase 3 of the SRG program, he resided with an inmate who was affiliated with an SRG that was different from his SRG. *Id.* at 5 ¶ 42; *id.* at 11. Phase 3 of the SRG program allegedly includes many restrictive conditions of confinement. *Id.* at 6-9 ¶¶ 2-13, 16-23, 25-27, 36-39. Mr. Davies allegedly wrote to Unit Manager Lieutenant Ocasio many times about the fact that the cells in Phase 3 of the SRG program smelled badly and were dirty and that his confinement in a cell for twenty-three hours each day was detrimental to his mental and physical health. *Id.* at 8-9 ¶¶ 24, 31, 34.

Mr. Davies allegedly repeatedly informed Lieutenant Ocasio in writing that he was not a member of the Latin King gang but was a member of the Los Solids gang. *Id.* at 9 ¶ 40, 42. Lieutenant Ocasio allegedly stated that he would change Mr. Davies's SRG affiliation to the Los Solids if something harmful happened to Mr. Davies. *Id.* at 9 ¶¶ 41-42. Mr. Davies allegedly wrote to Warden Corcella about the restrictive conditions of confinement in Phase 3 of the SRG program. *Id.* at 9 ¶ 37.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation

of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Mr. Davies claims that Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez, and Security Director Santiago violated his Fourteenth Amendment rights by failing to provide him with a ninety-day review prior to being placed in the SRG program; Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez violated his First and Fourteenth Amendment rights by failing to permit him to speak at his SRG hearing; Warden Corcella and Unit Manager Lieutenant Ocasio violated his First and Eighth Amendment rights by subjecting him to atypical and significant conditions in Phase 3 of the SRG program; and Unit Manager Lieutenant Ocasio violated his Eighth Amendment rights by failing to protect him from threats made by members of the Latin King gang. Mr. Davies seeks declaratory and injunctive relief and compensatory and punitive damages.

The Court will address each of these issues in turn.

A.      **Official Capacity Claims – Monetary Damages**

The Eleventh Amendment, which protects the state from suits for monetary relief, also

protects state officials sued for damages in their official capacity. *See Kentucky v. Graham*, 473

U.S. 159, 169 (1985) (The Eleventh Amendment's bar "remains in effect when state officials are

sued for damages in their official capacity." (citations omitted)); *Quern v. Jordan*, 440 U.S. 332,

342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). As a

result, to the extent that Mr. Davies seeks monetary relief from the Defendants in their official

capacities, those requests are barred by the Eleventh Amendment.

Accordingly, the requests seeking compensatory and punitive damages for violations of

Mr. Davies's First, Eighth, and Fourteenth Amendment rights by the Defendants in their official

capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

B.      **Official Capacity Claims – Declaratory Relief**

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek

prospective injunctive and declaratory relief to address an ongoing or continuing violation of

federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins.*

*Agency,* 482 F.3d 612, 618 (2d Cir. 2007) ("A plaintiff may avoid the Eleventh Amendment bar

to suit and proceed against individual state officers, as opposed to the state, in their official

capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b)

'seeks relief properly characterized as prospective.'" (quoting Verizon Maryland, Inc. v. Pub.

Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002)); *Ward v. Thomas*, 207 F.3d 114, 119 (2d

Cir. 2000) ("[R]emedies designed to end a continuing violation of federal law are necessary to

vindicate the federal interest in assuring the supremacy of that law, whereas compensatory or

deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." (internal quotation marks and alterations omitted)).

Mr. Davies seeks a declaration that the Defendants violated his First and Fourteenth Amendment rights in connection with his designation as an SRG member and placement in Phase 3 of the SRG program in 2019 and violated his Eighth Amendment rights by subjecting him to atypical and significant conditions of confinement in Phase 3 of the SRG program at Corrigan-Radgowski in 2019 and 2020. Compl. at 10. But a declaration that the defendants violated his federal constitutional rights in the past are barred by the Eleventh Amendment. *See P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief") (citations omitted).

Accordingly, the requests for declaratory relief will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.     Official Capacity Claims – Injunctive Relief

An inmate's requests for prospective injunctive relief from correctional officers or officials in connection with conditions of confinement at a particular correctional institution become moot when the inmate is discharged from that institution, is transferred to a different institution, has been released from prison or has received the relief requested. *See Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief." (citation and internal quotation marks omitted)); *Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009) (summary

order) ("When Khalil was released from prison, he no longer had a "continuing personal stake" in the outcome of this action, and his claims [for declaratory and injunctive relief for alleged violations of his constitutional rights] were rendered moot."); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489-90 (S.D.N.Y. 2008) (dismissing inmate's claims for injunctive and declaratory relief against Department of Correction officials on the ground that "[w]here a prisoner has been *released* from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot") (emphasis in original) (citations omitted).

Mr. Davies seeks an injunction directing Director Santiago and Warden Corcella to remove him from the SRG program and to place him in general population and an injunction directing the Department of Correction to conduct meaningful "90 day reviews" of inmates instead of arbitrarily placing and  leaving an inmate in the SRG program. Compl. at 10. Mr. Davies filed a notice with the Court in November 2020, however, indicating that he had been discharged from prison and resided in Bloomfield, Connecticut. Notice, ECF No. 9 (Nov. 10, 2020). Because Mr. Davies is no longer confined in a prison facility within the Connecticut Department of Correction, his requests seeking injunctive relief in the form of an order directing the Defendants to remove him from the SRG program and to conduct a 90 day review of his placement in the SRG program are moot.

Accordingly, this request for prospective injunctive relief will be dismissed under 28 U.S.C. § 1915A(b)(1).

### D.    Individual Capacity Claims – Due Process – SRG Hearing

In the description of his second legal claim, Mr. Davies contends that Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez violated his First

Amendment rights and deprived him of procedural due process in violation of the Fourteenth

Amendment in connection with a hearing held to determine whether to designate him as an SRG

member and place him in the SRG Program.

### 1.   The Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment "protects persons against

deprivations of life, liberty, or property." U.S. Const. amend. XIV. To state a procedural due

process claim, a plaintiff must allege that the "[d]efendants deprived him of a cognizable interest

in life, liberty, or property. . . without affording him constitutionally sufficient process." *Proctor*

*v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks and citations omitted).

The nature of the restrictive confinement status dictates the type of process that is due. *See*

*Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court explained that in the prison

setting, liberty interests protected by Due Process "will be generally limited to freedom from

restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The Court held that Conner's confinement in segregation for thirty days as a disciplinary sanction

"did not present the type of atypical, significant deprivation in which a State might conceivably

create a liberty interest." *Id.* at 486. Thus, an inmate has a protected liberty interest only if the

disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison

to "the ordinary incidents of prison life." *Id.*

Although the duration of disciplinary confinement is an important factor to consider in

determining whether a deprivation constitutes an atypical and significant hardship, the Second Circuit has "explicitly avoided a bright line rule that a certain period of . . . confinement automatically fails to implicate due process rights.." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal citations and quotation marks omitted). Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement . . . rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (internal citations and quotation marks omitted).

In *Hewitt v. Helms*, 459 U.S. 460 (1987), the Supreme Court considered what process should be afforded an inmate who had been placed in administrative segregation pending an investigation into a disciplinary charge. *Id.* at 474. The Court explained that it was appropriate to place an inmate in administrative segregation "when necessary to incapacitate an inmate who "represents a security threat" or to "complet[e] . . . an investigation into misconduct charges." *Id.* at 476. In connection with an inmate's placement on administrative segregation, he or she "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476. In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court applied that standard to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons. *Id.* at 229.

In *Wolff v. McDonnel*, 418 U.S. 539, 566 (1973), the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to

written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action. *Id.* at 564-66. The finding of guilt as to the disciplinary charge must be based on some "reliable evidence." *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks and citations omitted).

Mr. Davies alleges that, on May 2, 2019, Lieutenant Oullette and Intelligence Officer Ramirez charged him with possessing a document related to an SRG called the Latin King gang. See Compl. at 2 ¶ 8. Several days later, Mr. Davies conceded that he was a member of a gang called "Solid" or "Los Solids" but refused to sign the ticket charging him with affiliation with the Latin King gang. *Id.* at 5 ¶¶ 34-43. He contends that Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez deprived him of Fourteenth Amendment procedural due process by refusing to let him make a statement at the SRG hearing or by refusing to listen to anything that he had to say because their minds were already made up. *Id.* at 12. After the hearing, prison officials allegedly transferred Mr. Davies to Corrigan-Radgowski and placed him in Phase 3 of the SRG program. Id. at 6.

During his confinement in Phase 3, Mr. Davies allegedly experienced frequent unit lockdowns; confinement in his cell 23-hours a day; limitations on visitation, telephone calls, showers, commissary spending, congregate meals and religious services and recreation; and a lack of access to the library, a hot pot, a standard-sized tooth brush and a pen, and a toilet brush. In addition, he allegedly had to live in a dirty and smelly cell, wear a white jumpsuit to

recreation, to the medical department and to court, to be strip-searched before leaving his cell, and could not engage in educational, vocational or substance abuse programming. Compl. at 6-9 ¶¶ 2-13, 16-23, 25-27, 36-39, 42. Mr. Davies suggests that he was confined in Phase 3 of the SRG program for over a year from May 2019 until the end of June 2020.

As a result of these factual allegation, Mr. Davies has plausibly alleged that he had a liberty interest in not being designated as an SRG member and placed in Phase 3 of the SRG program.

It is not entirely clear from the facts alleged, however, whether Mr. Davies's designation as an SRG member and his placement in the SRG program was disciplinary or administrative. Mr. Davies has alleged that Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez either did not permit him to make a statement or present his views at the SRG hearing or deterred him from making a statement at the hearing. *Id.* at 12. He also suggests that no reliable evidence existed to support the charge of SRG affiliation and his placement in the SRG program. *Id.* Nevertheless, at this stage of the case, Mr. Davies has stated a plausible procedural due process claim under either the standard in *Hewitt* or the standard in *Wolff*.

Accordingly, the Court will permit the Fourteenth Amendment procedural due process claim against Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez in their individual capacities to proceed.

### 2.    The First Amendment Claim

Having permitted Mr. Davies's Fourteenth Amendment claim to proceed, his First Amendment claim arising from the same set of actions may not. Mr. Davies argues that Defendants Hickley, Oullette, and Ramirez also violated his First Amendment rights during the

SRG hearing by precluding him from speaking or expressing his views. Compl. at 12.  But unless Mr. Davies is alleging a First Amendment retaliation claim, he may not have alleged a viable First Amendment claim. *See Wilson v. Calderon*, 14 Civ. 6209 (GBD) (GWG), 2017 WL 2881153, at *15 (S.D.N.Y. July 6, 2017) ("To the extent [plaintiff] is asserting that he was not permitted to make statements during the internal investigation of the February 27 Incident or at the disciplinary hearing, those claims would arise under the Due Process protections of the Fifth and Fourteenth Amendment. . . . Any First Amendment claims, however, should be dismissed."), *report and recommendation adopted*, 2017 WL 3209148 (S.D.N.Y. July 27, 2017). In the event there is a viable First Amendment retaliation claim or some other First Amendment claim within the scope of his allegations, however, the Court will permit this case to proceed for now.

Accordingly, the First Amendment claim will be not dismissed, at least not now. *See* 28 U.S.C. § 1915A(b)(1).

### E.    Individual Capacity Claims – Due Process – Ninety-Day Review

In the description of his first legal claim, Mr. Davies alleges that Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez, and Security Director Santiago violated his Fourteenth Amendment right to procedural due process by failing to provide him with a ninety-day review or an individual assessment prior to sending him to administrative segregation or the SRG program. Compl. at 10 ¶ 3. The basis of this claim is not entirely clear.

The Court notes that State of Connecticut Department of Correction Administrative Directives 9.4 and 6.14 require ninety-day reviews if an inmate did not complete the SRG program prior to his or her release from prison and then is readmitted to the Department of Correction. *See* Admin. Dir. 6.4(18), https://portal.ct.gov/DOC/AD/AD-Chapter-6; Admin. Dir.

9.4(18)(D), https://portal.ct.gov/DOC/AD/AD-Chapter-9.[1]  Mr. Davies does not include facts suggesting that he was discharged from the Department of Correction after his designation as an SRG member in May 2019 and readmitted to the Department at some point before filing this lawsuit. Thus, there would be no basis under Administrative Directives 9.4(18) or 6.4(18) to provide Mr. Davies with a ninety-day review in addition to the hearing held prior to his placement in the SRG program.

Accordingly, the Fourteenth Amendment due process claim that Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez, and Security Director Santiago violated Mr. Davies's right to due process by failing to conduct ninety-day reviews and individualized assessments will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### F.    Individual Capacity Claims – Conditions – Phase 3 SRG Program

Mr. Davies alleges that he endured many restrictive and harsh conditions during his confinement in Phase 3 of the SRG Program. He states that the conditions caused him long-term emotional distress and violated his rights under First, Eighth, and Fourteenth Amendments.

### 1.    The Fourteenth Amendment Conditions Claim

The Eighth Amendment rather than the Fourteenth Amendment is applicable to conditions of confinement claims asserted by sentenced inmates. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (distinguishing between pretrial detainee's claims, which are brought under the Fourteenth Amendment, and post-conviction detainee's claims, which are brought under the Eighth Amendment); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2017) (observing that claims

---

[1]  The Court takes judicial notice of these Administrative Directives. *See Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18–81, establishing the parameters of operation for Connecticut facilities." (citation omitted)).

pertaining to the conditions of a pretrial detainee's confinement in a state prison facility should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[ ] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."). Mr. Davies does not articulate how his post-conviction conditions claim violated his Fourteenth Amendment rights.

Accordingly, the conclusory allegation that Defendants' Occasion and Corcella violated Mr. Davies's Fourteenth Amendment rights by subjecting him to restrictive conditions of confinement will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2.     The Eighth Amendment Conditions Claim

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme

Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Mr. Davies alleges that he was exposed to the following conditions during his confinement in Phase 3 of the SRG program for over a year: frequent unit lockdowns; confinement in his cell 23-hours a day;' limitations on visitation;, telephone calls; showers; commissary spending; congregate meals,  religious services, and recreation; a lack of access to the library; a hot pot; a standard-sized tooth brush and a pen; and a toilet brush. In addition, he allegedly had to live in a dirty and smelly cell; to wear a white jumpsuit to recreation, to the medical department and to court; to be strip-searched before leaving his cell; to sacrifice good time credits and the possibility of release on parole or transitional supervision or to a halfway house; and to be denied educational, vocational or substance abuse programming. Compl. at 6-9 ¶¶ 2-13, 16-23, 25-27, 36-39, 42

The conditions related to limits on visitation, telephone calls, showers, commissary

spending, congregate meals and religious services; access to the library, hot pots, standard-sized toothbrushes and pens, and a toilet brush; strip searches and uniform requirements, the cleanliness of Mr. Davies cell, and his ineligibility for credits and release before the end of his sentence do not rise to the level of serious deprivations of basic human needs. *See, e.g.*, *Trimmier v. Cook*, No. 3:20-CV-396 (KAD), 2020 WL 5231300, at *5 (D. Conn. Sept. 2, 2020) (The conditions that Trimmier claims to have been exposed to during his confinement in the SRG program . . . limited daily telephone calls and recreation, restrictions on commissary spending to $40.00 a day, visits only with family members, lack of access to a law library and a toilet brush and ineligibility for good time credit, parole release, halfway house placement, transitional supervision and vocational or educational programs-- do not constitute deprivations of Trimmier's basic human needs, such as food, clothing, shelter, medical care or safety." (citing *Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (considering conditions in phases two and three of Connecticut's SRG Program and concluding that "[a]lthough the conditions described may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional"))).

Accordingly, because Mr. Davies has not met the objective prong of the Eighth Amendment standard, these conditions of confinement claims will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Courts in the Second Circuit have held that temporary deprivations of hygiene items, including toothbrushes, for periods of up to two weeks do not constitute an objectively serious condition of confinement. *See, e.g.*, *Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir. 2003) ("Deprivation of other toiletries [including a toothbrush, toothpaste, and soap] for approximately

two weeks—while perhaps uncomfortable—does not pose such an obvious risk to an inmate's health or safety to suggest that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that they also drew] the inference." (second and third alterations in original) (internal quotation marks and citation omitted)); *Jabot v. MHU Couns. Roszel*, No. 14-CV-3951 (VB), 2016 WL 6996173, at *5 (S.D.N.Y. Nov. 29, 2016) ("[P]laintiff fails to show that denial of the ability to brush his teeth for an unspecified period of time rose to the level of deliberate indifference to his health or safety."); *Riddick v. Arnone*, No. 3:11-CV-631 SRU, 2012 WL 2716355, at *5 (D. Conn. July 9, 2012) (Denial of "a toothbrush, toothpaste, deodorant and soap. . . . for ten days does not constitute an Eighth Amendment violation."); *Fernandez v. Armstrong,* No. 3:02-CV-02252 (CFD), 2005 WL 733664, at *5 (D. Conn. Mar. 30, 2005) (denial of hygiene items including a toothbrush, toothpaste, soap, and shampoo for a period of sixteen days does not allege a violation of Eighth Amendment rights).

Mr. Davies has alleged that Warden Corsella and Unit Manager Lieutenant Ocasio failed to provide him with a toothbrush for periods of up to three weeks and he could not purchase a toothbrush for himself at the commissary. Compl. at 9 ¶ 38. The Court considers this allegation sufficient to state a plausibly serious deprivation of basic human need.

In *McCray v. Lee*, 963 F.3d 110 (2d Cir. 2020), the Second Circuit observed that a prisoner's right "to a meaningful opportunity for physical exercise had been clearly established" since 1985. *Id*. at 120 (citing *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)). The allegation that Defendants Corcella and Ocasio did not permit Mr. Davies to exercise for weeks at a time during his year-long confinement in the

SRG phase program states a plausible claim of a serious deprivation of a basic human need.

Mr. Davies has plausibly alleged that his isolation in a cell for close to twenty-four hours a day for over a year caused him to suffer a serious deprivation of a basic human need for mental health. *See, e.g.*, *Baltas v. Erfe*, No. 3:19-CV-1820 (MPS), 2020 WL 1915017, at *29 (D. Conn. Apr. 20, 2020) (isolation causing depression could constitute a sufficiently serious deprivation of a need for mental health).

Mr. Davies asserts facts to suggest that Warden Corsella and Unit Manager Lieutenant Ocasio were either responsible for or aware of these harsh conditions but failed to take steps to alleviate the severity of the conditions. Thus, the subjective prong of the Eighth Amendment standard has been met.

Accordingly, the Court will permit the following allegations to proceed against Defendants Corcella and Ocasio in their individual capacities: that Mr. Davies's confinement in his cell for twenty-three hours a day affected his mental health and caused him emotional distress; that Mr. Davies was without a toothbrush at times for three weeks; and that he often could not exercise for weeks at a time.

### 3.    The First Amendment Condition Claim

It is well-established that an inmate has a First Amendment right to freely exercise his or her chosen religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." (internal citation omitted)).  An inmate's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford v. McGinnis*, 352 F.3d 582, 588

(2d Cir. 2003) (internal quotation marks and citation omitted).

To state a First Amendment free exercise claim, an inmate is required to make a threshold showing "that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).[2]  In determining whether an inmate's religious beliefs are sincere, a district court should not "evaluate the objective reasonableness of the [inmate's] belief" but consider only whether the inmate "sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590.

Mr. Davies does not articulate how the conditions of confinement violated his First Amendment rights. He has asserted an allegation that Warden Corcella and Unit Manager Lieutenant Ocasio did not permit him to engage in congregate religious services during his confinement in Phase 3 of the SRG program.

Mr. Davies also does not identify the religion or faith that he practices or allege that he sincerely holds any religious beliefs. Nor does he allege that he could not practice his religion during his confinement in Phase 3 of the SRG program absent the opportunity to attend

---

[2]  In the last several years, the Second Circuit has recognized that a question exists as to whether an inmate must establish that the conduct of prison officials resulted in a "substantial burden" on his religious beliefs in order to state a First Amendment free exercise claim. *See Washington v. McKoy*, 816 F. App'x 570, 573-74 (2d Cir. 2020)  (summary order) ("Although this Court has not yet decided whether a prisoner asserting a free exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs. . . ."); *Brandon v. Kinter*, 938 F.3d 21, 32 n.7 (2d Cir. 2019)("Our Circuit has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872, 887 (1990)."); *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.")\ (citations and internal quotation marks omitted)). Because the impact of the Supreme Court's decision in *Smith* has not yet been addressed by the Second Circuit, this Court will continue to apply the substantial burden test. *See Richard v. Strom*, No. 3:18-CV-1451(CSH), 2018 WL 6050898, at *3n.1 (D. Conn. Nov. 19, 2018) (noting the "Second Circuit['s] uncertainty" as to whether an inmate must continue to make a "threshold showing" that the conduct of the prison official substantially burdened his or her religious beliefs, but observing that "absent instruction to the contrary, Second Circuit courts have continued to assume the

congregate religious services. As a result, Mr. Davies has not asserted facts to state a plausible First Amendment free exercise claim.

Accordingly, the First Amendment claim will be dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### G.   Individual Capacity Claims – Failure to Protect

It is well-established that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody and "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33 (internal quotation marks and citations omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("The Eighth Amendment . . . imposes on prison officials a duty . . . to protect prisoners from violence at the hands of other prisoners." (internal quotation marks and citation omitted)). To state a claim of failure to protect or deliberate indifference to safety under the Eighth Amendment, an inmate must allege that he or she is "incarcerated under conditions posing a substantial risk of serious harm," and that the prison official acted with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted).

Mr. Davies alleges that during his confinement in the Phase 3 of the SRG program he was affiliated with a gang called the "Los Solids," but the Defendants had designated him as a member of the Latin King gang. Compl. at 5 ¶¶ 34-37; *id.* at 7 ¶¶ 14-15. Although he allegedly repeatedly informed Unit Manager Lieutenant Ocasio that he was not a member of the Latin King gang and that he had received numerous written threats of physical harm, Lieutenant Ocasio allegedly indicated that he would not change Mr. Davies affiliation until something

---

validity of the substantial burden test when addressing free exercise claims" (citations omitted)).

happened to Mr. Davies. *Id.* at 9 ¶¶ 40-42.

Mr. Davies has sufficiently alleged that he had received written threats of physical harm from inmates in Phase 3 of the SRG program who were members of the Latin King gang, because they were upset that he was designated as a member of the Latin King gang but was in fact not a member of the gang. This allegation is sufficient to meet the objective component of the Eighth Amendment standard. *See, e.g.*, *Wine v. Chapdelaine*, No. 3:18-CV-704 (VAB), 2020 WL 4059845, at *7 (D. Conn. July 19, 2020) (plaintiff's allegations that he was subjected him to a risk of serious injury by permitting him to remain housed with inmates who had threatened to physically harm him satisfied objective element). Although Mr. Davies does not allege that he was, in fact, assaulted or harmed by another gang member, the allegations that Defendant Ocasio subjected Mr. Davies to a serious risk of harm, by allegedly wanting to wait until something happened to him, are sufficient, at this stage of the litigation, to meet the subjective component of the Eighth Amendment standard.

Accordingly, The Eighth Amendment failure to protect claim against Defendant Ocasio in his individual capacity will proceed for further development of the record.

## H.    Individual Capacity Claims – SRG Coordinator Papoosha

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A government or prison official is not personally involved in a constitutional violation simply because he or she was the supervisor of other defendants who may have violated the plaintiff's constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) ("[L]iability for

24

supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant").

The Second Circuit has recently held that "after *Iqbal,* there is no special rule for supervisory liability," and instead, "[t]he violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Therefore, in order to demonstrate personal involvement under § 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

Mr. Davies does not assert facts regarding the conduct of SRG Coordinator Papoosha in the body of the Complaint. In his description of legal claims, Mr. Davies refers to Papoosha as the "mastermind to all these illegal designations saying there is a point system" and that Papoosha is the SRG Coordinator who "runs this corruption." Compl. at 11-12. These allegations do not demonstrate the direct involvement of SRG Coordinator Papoosha in the claimed violations of Mr. Davies's constitutional rights. The conclusory allegations regarding Defendant Papoosha's role as a supervisor of the SRG program do not state a claim.

Accordingly, Mr. Davies's First or Fourteenth Amendment claims against SRG Coordinator Papoosha will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

25

**ORDERS**

The Court enters the following orders:

**(1)**      The following claims will be **DISMISSED** without prejudice under 28 U.S.C. §
1915A(b)(1)**:** The requests for declaratory and injunctive relief; the claim that Investigation
Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez violated Mr. Davies First
Amendment rights in connection with the SRG hearing; the Fourteenth Amendment due process
claim that Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez, and
Security Director Santiago neglected to provide Mr. Davis with a ninety-day review and
individualized assessment prior to his placement in the SRG program; the Fourteenth
Amendment claim that Warden Corcella and Unit Manager Lieutenant Ocasio subjected Mr.
Davies to restrictive conditions during his confinement in Phase 3 of the SRG program; the
Eighth Amendment claims related to various conditions, other than conditions involving a lack
of exercise, the denial of toothbrush, and confinement to a cell for 23 hours a day, as asserted
against Warden Corcella and Unit Manager Lieutenant Ocasio; and the First and Fourteenth
Amendment claims asserted against SRG Coordinator Papoosha; and the First Amendment claim
that denied Mr. Davies congregate religious services.

The requests for compensatory and punitive damages for violations of Mr. Davies's First,
Eighth, and Fourteenth Amendment rights by the Defendants in their official capacities are
**DISMISSED** with prejudice under to 28 U.S.C. § 1915A(b)(2). Accordingly, all claims asserted
against Security Director Santiago and SRG Coordinator Papoosha have been **DISMISSED.**

The Court will permit the following claims to **PROCEED**: the Eighth Amendment
failure to protect claim as asserted against Unit Manager Lieutenant Ocasio in his individual

26

capacity; the Eighth Amendment conditions claims related to Mr. Davies's confinement in his cell for twenty-three hours a day, his lack of access to a toothbrush for weeks at a time, and his lack of recreational/exercise opportunities, that occurred during his confinement in Phase 3 of the SRG program, as asserted against Warden Corsella and Unit Manager Lieutenant Ocasio in their individual capacities; and the Fourteenth Amendment procedural due process claim related to the SRG hearing to determine Mr. Davies's designation as an SRG member and placement in the SRG program, as asserted against Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez in their individual capacities.

**(2)**      The Clerk of Court shall verify the current work addresses of Investigation Officer Hickley, who may also be known at Officer Hinckley,[3] Lieutenant Oullette, Intelligence Officer Ramirez, Warden Corsella, and Unit Manager Lieutenant Ocasio with the Department of Correction Legal Affairs Unit. The Clerk shall mail a copy of the Complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. By **July 2, 2021**, the Clerk of Court shall report to the Court on the status of the requests. If a Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)**      Defendants Hickley, Oullette, Ramirez, Corsella, and Ocasio shall file their response to the complaint, either an Answer or motion to dismiss, by **September 3, 2021**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses

---

[3] On pages fifteen and sixteen of the complaint, Mr. Davies spells Investigation Officer Hickley's last name as Hinckley. ECF No. 1 at 15-16.

permitted by the Federal Rules.

(4)    Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 14, 2022**. Discovery requests need not be filed with the Court.

(5)    All motions for summary judgment shall be filed by **February 18, 2022**.

(6)    If Mr. Davies changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Davies should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. Davies has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Davies should also notify the attorney for the defendants of his new address.

(7)    The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8)    The Clerk of Court shall send a courtesy copy of the complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**SO ORDERED** at Bridgeport, Connecticut this 11th day of June, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE