UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAQUAN DAVIES,
    *Plaintiff*,

v.

HICKLEY, et al.,
    *Defendants.*

No. 3:20-cv-00940 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT**

Jaquan Davies ("Plaintiff") currently resides in Bloomfield, Connecticut, and has filed a civil rights Complaint *pro se* under 42 U.S.C. § 1983 against Investigation Officer Hickley, Lieutenant Oullette, Intelligence Officer Ramirez, Unit Manager Lieutenant Ocasio, Warden Corcella, Security Director Antonio Santiago, and Security Risk Group ("SRG") Coordinator Papoosha (together, "Defendants"). *See* Compl. at 1, ECF No. 1 (July 8, 2020) ("Compl.").

Defendants allegedly failed to provide Mr. Davies with procedural due process in connection with his designation as a member of an SRG and placement in the SRG program, and subjected him to unconstitutional conditions during his confinement in the SRG program.

On June 11, 2021, the Court dismissed Mr. Davies's Complaint in part. Initial Review Order, ECF No. 10 (June 11, 2021) ("Initial Review Order").

Mr. Davies's case was permitted to proceed on: (1) his Eight Amendment failure to protect claim, as asserted against Unit Manager Lieutenant Ocasio in his individual capacity; (2) the Eighth Amendment conditions claims related to Mr. Davies's confinement in his cell for twenty-three hours a day, his lack of access to a toothbrush for weeks at a time, and his lack of recreational/exercise opportunities, that occurred during his confinement in Phase 3 of the SRG

1

program, as asserted against Warden Corsella and Unit Manager Lieutenant Ocasio in their individual capacities; and (3) the Fourteenth Amendment procedural due process claim related to the SRG hearing to determine Mr. Davies's designation as an SRG member and placement in the SRG program, as asserted against Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez in their individual capacities. *Id.* at 26–27.

Defendants now move to dismiss the Fourteenth Amendment procedural due process claim. Defs.' Mot. to Dismiss, ECF No. 17 (Sept. 3, 2021) ("Defs.' Mot. to Dismiss"); Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 17-1 (Sept. 3, 2021) ("Defs.' Mem. in Supp. of Mot. to Dismiss").

Defendants also move for summary judgment on all three remaining claims. Defs.' Mot. for Summ. J., ECF No. 21 (Feb. 18, 2022) ("Defs.' Mot. for Summ. J."); Mem. of Law in Supp. of Defs.' Mot. for Summ. J., ECF No. 21-1 (Feb. 18, 2022) ("Defs.' Mem. in Supp. of Mot. for Summ. J.").

For the following reasons, Defendants' motion to dismiss is **DENIED as moot**, and Defendants' motion for summary judgment is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

On April 3, 2018, a judge in the Superior Court for the Judicial District of Hartford sentenced Mr. Davies to ten years of imprisonment, execution suspended after four years, and

---

[1] To determine the undisputed facts in this case, the Court relies upon the parties' Local Rule 56(a) Statements (to the extent that they comply with the Federal Rules of Civil Procedure and the Local Rules of this District) and evidence cited therein. Mr. Davies has failed to file a Local Rule 56(a)(2) Statement in response to Defendants' Local Rule 56(a)(1) Statement. "Where a party asserts a fact and the opposing party either fails to deny the assertion or, in issuing a denial, the party does not cite to evidence disputing its accuracy, the Court deems such fact admitted." *Malick v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-00669 (VLB), 2015 WL 5797008, at *1 n.1 (D. Conn. Sept. 30, 2015); *see also* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in

followed by three years of probation under his plea of guilty to one count of robbery in the second degree in violation of Connecticut General Statutes § 53a-135(a)(1)(A). *See Criminal/Motor Vehicle Convictions Name Summary*, State of Conn. Judicial Branch, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=9b1e0f4f-f48a-4e89-b853-93819edb554c (last visited Aug. 4, 2022).

Between May 1, 2019 and May 14, 2019, Mr. Davies resided at the Carl Robinson Correctional Institution ("Robinson Correctional Institution"). Ex. 1 to Defs.' Mot. for Summ. J. ¶ 2, ECF No. 21-2 (Feb. 18, 2022) ("Defs.' 56(a)(1) Statement") (citing Ex. 3 to Defs.' Mot. for Summ. J. ¶ 5, ECF No. 21-4 (Feb. 18, 2022) ("Basley-Motley Decl.")); *see also* Compl. at 2 ¶ 1.

On or about May 2, 2019, Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez began an investigation into Mr. Davies's affiliation with an SRG. Compl. at 2 ¶ 1–13.

Between May 1, 2019 and May 14, 2019, Mr. Davies did not file any administrative remedies at the Robinson Correctional Institution. Defs.' 56(a)(1) Statement ¶ 5 (citing Basley-Motley Decl. ¶¶ 3–4).

Between May 2, 2019 and May 14, 2019, Mr. Davies was designated as a member of the Latin King gang, an SRG. Compl. at 5 ¶ 39. Several days after being placed in a cell in the restrictive housing unit, Mr. Davies told Lieutenant Oullette that he was not a member of the Latin Kings gang, but a member of Los Solids or Solid, a different SRG. *Id.* at 5 ¶ 34. Mr. Davies alleges that Investigation Officer Hickey, Lieutenant Oulette, and Intelligence Officer Ramirez refused to let him make a statement at the SRG hearing and refused to listen to anything he had to say. *Id.* at 12.

---

accordance with this Local Rule[.]"). The Court deems admitted each material fact set forth in Defendants' Local Rule 56(a)(1) Statement, to the extent it is supported by the evidence.

On May 14, 2019, Mr. Davies was transferred to the SRG program at the Corrigan Correctional Center, where he remained until he was released from incarceration on December 21, 2020. Defs.' 56(a)(1) Statement ¶¶ 3-4; Compl. at 6.

While at Corrigan Correctional Center, Mr. Davies allegedly wrote to the unit manager at the facility about the conditions in which the inmates were being held. Compl. at 7 ¶ 15. He also allegedly wrote to Lieutenant Ocasio several times to say that he is not a gang member and that his life was "in harm[']s way in the SLG program" because he could be harmed for appearing to be part of a gang to which he does not belong. *Id.* at 5 ¶ 37, 8 ¶ 34, 40. In response, the unit manager allegedly told Mr. Davies that his gang affiliation would be changed if anything were to happen to him. *Id.* at 9 ¶¶ 41–42.

During his time at Corrigan Correctional Center, Mr. Davies was allegedly kept in his cell for 23 hours a day, and allowed only forty-five minutes to one hour of recreational time a day. *Id.* at 6–7 ¶¶ 2, 20. He allegedly only was allowed one day of vigorous exercise every week. *Id.* at 7 ¶ 19. He also claims to have not received toothbrushes for three weeks, and that he was not allowed to buy one for himself. *Id.* at 9 ¶ 38.

Between May 14, 2019 and August 31, 2020, Mr. Davies also did not file any administrative remedies at Corrigan Correctional Center. Defs.' 56(a)(1) Statement ¶ 6 (citing Ex. 4 to Defs.' Mot. for Summ. J. ¶¶ 3-4, ECF No. 21-5 (Feb. 18, 2022) ("Jacaruso Decl.")).

From August 15, 2013 through April 29, 2021, the Connecticut Department of Correction's Administrative Directive 9.6 (Revised Aug. 13, 2013) governed Inmate Administrative Remedies. Defs.' 56(a)(1) Statement ¶ 7 (citing Ex. 2 to Defs.' Mot. for Summ. J. ECF No. 21-3 (Feb. 18, 2022) ("A.D. 9.6")).

4

Mr. Davies did not file any administrative remedies in accordance with A.D. 9.6 between May 1, 2019 and August 31, 2020. Defs.' 56(a)(1) Statement ¶ 8 (citing Compl.; A.D. 9.6; Basley-Motley Decl. ¶¶ 3–4; Jacaruso Decl. ¶¶ 3–4).

### B. Procedural History

On July 8, 2020, Mr. Davies filed his Complaint. Compl.

On June 11, 2021, the Court issued an Initial Review Order dismissing Mr. Davies's Complaint in part. Initial Review Order.

On September 3, 2021, Defendants filed their motion to dismiss Mr. Davies's Fourteenth Amendment procedural due process claim. Defs.' Mot. to Dismiss; Defs.' Mem. in Supp. of Mot. to Dismiss.

On February 18, 2022, Defendants filed their motion for summary judgment. Defs.' Mot. for Summ. J.; Defs.' Mem. in Supp. of Mot. for Summ. J.

On the same day, Defendants filed their statement of material facts. Defs.' 56(a)(1) Statement.

The Court held a hearing on these motions on August 3, 2022. Min. Entry, ECF No. 28 (Aug. 3, 2022).

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### B. Summary Judgment

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

7

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-CV-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (internal citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which

8

summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.  DISCUSSION

The remaining claims in this case are an Eighth Amendment failure to protect claim, an Eighth Amendment conditions of confinement claim, and a Fourteenth Amendment procedural due process claim.

Defendants move for summary judgment on the two Eighth Amendment claims and the Fourteenth Amendment claim on the ground that Mr. Davies failed to exhaust all administrative remedies before commencing this action, as required by the Prison Litigation Reform Act. Defs.' Mem. in Supp. of Mot. for Summ. J. at 5.

Defendants move to dismiss the Fourteenth Amendment claim on the ground that Mr. Davies has failed to set forth a plausible due process claim because the procedural error that forms the basis of his Complaint—that he was designated as a member of the wrong Security Risk Group—is harmless and would not have led to a different result. Defs.' Mot. to Dismiss at 7.

The Court will address these arguments in turn.

### A.  The Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear their case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 632–36 (2016) (applying the PLRA and

9

noting that it "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions" (quoting 42 U.S.C. § 1997e(a))). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . rules that are defined not by the PLRA, but by the prison grievance process itself." (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006))); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly" (quoting *Woodford*, 548 U.S. at 90)). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (internal citation omitted)).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are, in fact, unavailable. *See Ross*, 578 U.S. at 642 ("Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." (internal citation and quotation marks omitted)). The Supreme Court has determined that "availability" in this context

10

means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal citation and quotation marks omitted).

The Supreme Court in *Ross* identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive . . . ." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("The Supreme Court described three scenarios in which administrative procedures could be 'officially on the books,' but 'not capable of use to obtain relief,' and therefore unavailable. While not exhaustive, these illustrations nonetheless guide the Court's inquiry." (quoting *Ross*, 578 U.S. at 643)).

Exhaustion of administrative remedies is an affirmative defense. Thus, Defendants bear the burden of proof. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Once Defendants establish that administrative

11

remedies were not exhausted before the inmate commenced the action, Plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion, unavailability, estoppel, or special circumstances." (internal citation and quotation marks omitted)).

### 1. Eighth Amendment Claims

Mr. Davies contends that Unit Manager Lieutenant Oscasio did not protect Mr. Davies from violence at the hands of other prisoners during his confinement in Phase 3 of the SRG Program. Mr. Davies also contends that Lieutenant Ocasio and Warden Corsella subjected him to unconstitutional conditions of confinement.

The general Inmate Grievance Procedure is set forth in Administrative Directive 9.6,[2] Section 6 and is applicable to Mr. Davies's Eighth Amendment failure to protect and conditions of confinement claims. *See* A.D. 9.6 at 3.

An inmate must first attempt to seek an informal resolution before filing the grievance, by resolving the issue verbally with a staff member or manager. *See id.* at 6 § 6(A). If the attempted verbal resolution is unsuccessful, the inmate must submit a written request via CN 9601, the Inmate Request Form, and clearly state the problem and the requested remedy. *See id.*

---

[2] The current Administrative Directive 9.6 became effective on April 30, 2021. Admin. Directive Chapter 9 Classification, Conn. State Dep't of Corr., https://portal.ct.gov/DOC/AD/AD-Chapter-9. This Order cites to the version of the Administrative Directive, as provided in Exhibit 2 to Defendants' motion for summary judgment, *see* Ex. 2 to Defs.' Mot. for Summ. J., ECF No. 21-3 (Feb. 18, 2022), that was in effect at the time of the events that are at issue in this case.

A response to the request form will be made within fifteen business days. An inmate may then file a Level 1 grievance if they are unsatisfied with the response to the written request, by completing form CN 0602, Inmate Administrative Remedy Form. *See id.* § 6(C). The grievance is then reviewed, investigated, and decided by the Unit Administrator, who then responds in writing to communicate the disposition of the grievance. *See id.* at 7, § 6(I). An inmate may appeal a Level 1 grievance disposition to Level 2 review. *Id.* § 6(K). A Level 2 appeal is reviewed and decided by the appropriate District Administrator. *Id.* § 6(K)(1). An inmate may then appeal a Level 2 disposition to Level 3 review if the grievance is challenging Department level policy, is challenging the integrity of the grievance procedure, or exceeds the established 30-day time limit for a Level 2 grievance response. *Id.* § 6(L). Level 3 reviews are made by the Commissioner or designee. *Id.*

Mr. Davies alleges he received written threats of physical harm after he was incorrectly designated as a member of the Latin King gang by Lieutenant Ocasio. Compl. at 14. Mr. Davies repeatedly told Lieutenant Ocasio he is not a Latin King, and that he feared for his life, *id.* at 8–9 ¶¶ 34, 40–42, because the Latin King gang would want to harm him for appearing to claim the gang as his own, *id.* at 5 ¶ 37.

Mr. Davies also alleges harsh conditions, including confinement in his cell for twenty-three hours a day, *id.* at 7 ¶ 23, his lack of access to a toothbrush for weeks at a time, *id.* at 9 ¶ 38, and his lack of recreational/exercise opportunities, *id.* at 7 ¶ 19. Mr. Davies wrote to the Unit Manager and Warden Corsella about his conditions of confinement. *Id.* at 9 ¶ 37. He also wrote to Lieutenant Ocasio that "solitary confinement is detrimental to the human mind" and "creating mental health problems." *Id.* at 8 ¶ 31.

After Mr. Davies's attempts to reach informal resolutions through verbal and written

communication with Lieutenant Ocasio and written complaints to Warden Corsella, the next step, in accordance with A.D. 9.6, would have been to file a grievance. The record does not reflect, and Mr. Davies does not allege, that he filed any grievances for administrative remedies at Robinson Correctional Institution or Corrigan Correctional Center between May 1, 2019 and August 31, 2020, the time period relevant to these claims. Defs. 56(a)(1) Statement ¶¶ 5–6 (citing Basley-Motley Decl, ¶¶ 3–4; Jacaruso Decl. ¶¶ 3–4). Inmates "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison staff. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Timmons v. Schriro*, No. 14-CV-6606 RJS, 14-CV-6857 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

Mr. Davies does not contend that the grievance procedure or any other administrative remedy was unavailable due to the circumstances set forth in *Ross*: that the administrative procedure operates as a dead end; is so opaque it is effectively unavailable; or prison administrators prevent inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation. *See Ross*, 578 U.S. at 644.

Thus, Mr. Davies did not properly exhaust his administrative remedies on his failure to protect and conditions of confinement claims, as required by the PLRA.

Accordingly, Defendants' motion for summary judgment will be granted as to the Eighth Amendment claims.

### 2. Fourteenth Amendment Claim

Mr. Davies contends that Investigation Officer Hickley, Lieutenant Oullette, and Intelligence Office Ramirez violated his Fourteenth Amendment right to procedural due process

when he was denied the opportunity to make a statement at the hearing related to his designation as a member of a Security Risk Group.

The Appeal of a Security Risk Group Member Designation is set forth in Administrative Directive 9.6 § 9 and is applicable to Mr. Davies's Fourteenth Amendment procedural due process claim. *See* A.D. 9.6 at 3. An inmate may appeal an initial Security Risk Group member designation by completing form CN 9602, the Inmate Administrative Remedy Form and depositing it in the Administrative Remedies box. *Id.* at 11. The appropriate District Administrator will then respond in writing. *Id.* The District Administrator's decision is not subject to further appeal. *Id.*

Mr. Davies repeatedly told Officer Hickley, Lieutenant Oullette, and Intelligence Officer Ramirez that he was not a member of the Latin Kings. (Compl. at 2 ¶ 10, 4 ¶ 30, 5 ¶ 34). Mr. Davies, however, does not appear to have filed and does not claim to have filed an appeal to his designation as a member of a Security Risk Group between May 1, 2019 and August 31, 2020. Defs. 56(a) Statement ¶¶ 5-6 (citing Basley-Motley Decl. ¶¶ 3–4; Jacaruso Decl. ¶¶ 3–4).

Mr. Davies does not contend that the Security Risk Group Member Designation appeal procedure or any other administrative remedy was unavailable due to the circumstances set forth in *Ross*: that the administrative procedure operates as a dead end; is so opaque it is effectively unavailable; or prison administrators prevent inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation. *See Ross*, 578 U.S. at 644.

Thus, Mr. Davies did not properly exhaust his administrative remedies on the Fourteenth Amendment procedural due process claim, as required by the PLRA.

Accordingly, Defendants' motion for summary judgment will be granted as to the Fourteenth Amendment procedural due process claim.

### B. Motion to Dismiss

As the Fourteenth Amendment claim, the sole basis for the filing of the motion to dismiss, will be dismissed on the motion for summary judgment, the Court will not address this motion.

Accordingly, the motion to dismiss is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED as moot**, and Defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut this 5th day of August, 2022.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE